**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>hhgregg, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-01302-JJG-11<br><br>(Jointly Administered) |
| Official Committee of Unsecured Creditors<br>of Gregg Appliances, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>D & H Distributing Company,<br><br>Defendant. | Adv. No. 17-50282-JJG |

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO THE PLAINTIFF'S CLAIMS AGAINST
THE DEFENDANT, D & H DISTRIBUTING COMPANY**

Defendant, D & H Distributing Company ("D&H"), pursuant to Federal Rules of Civil

Procedure 56(a), as incorporated herein by Rule 7056 of the Federal Rules of Bankruptcy

Procedure and Local Bankruptcy Rule 7056-1 of the United States Bankruptcy Court for the

Southern District of Indiana (the "Local Rules"), submits this Response in Opposition to the

*Plaintiff's Motion for Summary Judgment* [Doc. No. 41] ("Motion"). In support of its Opposition

to the Plaintiff's Motion for Summary Judgment, D&H submits the following documents: (1)

*Defendant's Response Brief in Opposition to the Plaintiff's Motion for Summary Judgment*; (2)

*D&H's Response to the Debtors' Statement of Material Facts* (**Exhibit A**); (3) the *Declaration of*

*Anthony Warfield in Support of the Defendant's Response in Opposition to the Debtors' Motion*

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are:
hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); and HHG Distributing LLC (5875). The location of the Debtors'
corporate headquarters is 755 W. Carmel Drive, Suite 207, Carmel, Indiana 46032.

*for Summary Judgment* (the "*Warfield Dec.*") (**Exhibit B**); and various deposition excerpts (**Exhibits C - H**).

PLEASE TAKE NOTICE that D&H Distributing Company consents to this Court's entry of final orders or judgment in this adversary proceeding.

LEECH TISHMAN FUSCALDO &
LAMPL, LLC

Dated:  February 7, 2020

*/s/ Patrick R. Malone*
Patrick W. Carothers (PA ID No. 85721)
Patrick R. Malone (PA ID No. 206479)
Gregory W. Hauswirth (PA ID No. 307482)
525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
Telephone:  412.261.1600
Facsimile:  412.227.5551
pcarothers@leechtishman.com
pmalone@leechtishman.com
ghauswirth@leechtishman.com

*Counsel for Defendant, D & H Distributing Company*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>hhgregg, Inc., *et al.*,[1]<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 17-01302-JJG-11<br><br>(Jointly Administered) |
| Official Committee of Unsecured Creditors<br>of Gregg Appliances, Inc.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>D & H Distributing Company,<br><br>　　　　　　　　　　　Defendant. | Adv. No. 17-50282 |

**DEFENDANT'S RESPONSE BRIEF IN OPPOSITION TO THE PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE PLAINTIFF'S
<u>CLAIMS AGAINST THE DEFENDANT, D & H DISTRIBUTING COMPANY</u>**

Patrick W. Carothers (PA ID No. 85721)
Patrick R. Malone (PA ID No. 206479)
Gregory W. Hauswirth (PA ID No. 307482)
LEECH TISHMAN FUSCALDO & LAMPL, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
Telephone: 412.261.1600
Facsimile: 412.227.5551
pcarothers@leechtishman.com
pmalone@leechtishman.com
ghauswirth@leechtishman.com

*Counsel for Defendant, D & H Distributing Company*

Dated: February 7, 2020

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: hhgregg, Inc. (0538); Gregg Appliances, Inc. (9508); and HHG Distributing LLC (5875). The location of the Debtors' corporate headquarters is 755 W. Carmel Drive, Suite 207, Carmel, Indiana 46032.

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**……………………………………………………**iii**

**I.     INTRODUCTION/SUMMARY OF ARGUMENT** …………………………………1

**II.    NATURE AND STAGE OF PROCEEDINGS** …………………………………6

**III.   STATEMENT OF MATERIAL FACTS IN DISPUTE
       AND RELEVANT BACKGROUND** …………………………6

**IV.    LEGAL ARGUMENT** …………………………………………8

       **A.     Summary Judgment Standard** …………………………8

       **B.     Plaintiff has not proved its *prima facie* case
              under 11 U.S.C. § 547(b)** …………………………10

       **C.     A Material Issue of Fact Exists as to Whether a
              Subjective Ordinary Course of Business Defense
              can be Raised Pursuant to 11 U.S.C. §547(c)(2)(A)** …………………12

              **i.     Elements of the Subjective Ordinary Course of
                     Business Defense Pursuant to 11 U.S.C. § 547(c)(2)(A).**…………12

              **ii.    D&H Has Presented Factual Bases that the
                     Transfers Meet the Subjective Ordinary Course of
                     Business Defense Pursuant to 11 U.S.C. § 547(c)(2)(A)**…………14

              **iii.   The Plaintiff's Counter-Arguments All Raise Factual Issues** ..16

**V.     CONCLUSION** …………………………………………23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986) .................................................................................................. 9

*Dunlap v. K.L. Properties, LLC (In re Wasp Precision Mach., Inc.),*
    No. 06-03842-JKC, 2008 WL 1957792, at *2 (Bankr. S.D. Ind. May 1, 2008).............. 10

*Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir.2004) ......................................... 9

*Hakim v. Accenture U.S. Pension Plan, 718 F.3d 675, 681* (7th Cir. 2013) ................................. 9

*In re Am. Home Mortg. Holdings, Inc.*, 476 B.R. 124, 138 (Bankr. D. Del. 2012)..................... 17

*In re Big Wheel Holding Co., Inc.*, 223 B.R. 669, 674 (Bankr. D. Del. 1998) ........................... 18

*In re Blue Global, Inc.*, 591 B.R. 433, 448 (Bankr. C.D. Cal. 2018) ......................................... 20

*In re Elrod Holdings Corp.*, 426 B.R. 106, 111, 112 (Bankr. D. Del. 2010) .............................. 17

*In re Hill*, 589 B.R. 614, 625 (Bankr. E. D. Ill. 2018) .................................................................. 13

*In re Prescott,* 85 F.2d 719, 726 (7th Cir. 1986) ........................................................................ 10

*In re Sparrer Sausage Co. Inc.*, No. ADV 13 AP 01195, 2014 WL 4258103,
    (Bankr. N.D. Ill. Aug. 27, 2014) ............................................................................... 19

*In re Tennessee Chemical Co.*, 112 F.3d 234, 236, 237, 238 (6th Cir. 1997) ...................... 17, 18

*Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003) ......................................... 13

*Lovett v. St. Johnsbury Trucking*, 931 F. 2d 494, 497 (8th Cir. 1991) ................................... 13, 17

Marathon Oil Co. v. Flatau (In re Craig Oil Co.), 785 F.2d 1563, 1563
    (11th Cir.1986)...................................................................................................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586,
    106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ................................................................... 9

*O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. Ill. 2011) ................................... 9

*Pastore v. Bell Tel. Co.,*24 F.3d 508, 512 (3d Cir.1994) ............................................................. 9

*Rush v. McDonald's Corp., 966 F.2d 1104, 1114* (7th Cir. Ind. 1992) ......................................... 9

*Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.*,
    826 F.3d 388, 393, 394, 395, 396 (7th Cir. 2016) ...................................... 4, 5, 13, 17, 19

*Util. Stationery Stores, Inc. v. American Portfolio, et al.*
    *(In re Util. Stationery Stores, Inc.),* 12 B.R. 170, 175 (Bankr. N.D. Ill. 1981) ............... 10

## Statutes

11 U.S.C. § 547(b) .................................................................................................... 11, 12

11 U.S.C. § 547(b)(5) ...................................................................................................... 2

11 U.S.C. § 547(c)(2)(A) ......................................................................................... 12, 22

11 U.S.C. § 547(c)(2)(B) .............................................................................................. 12

11 U.S.C. § 547(g) ........................................................................................................ 10

## Rules

Fed.R.Civ.P. 56(e) ......................................................................................................... 9

Federal Rule of Bankruptcy Procedure 7056 ................................................................. 1

Federal Rule of Bankruptcy Procedures 7056 ............................................................... 1

Federal Rules of Civil Procedure 56(a) ................................................................... 1, 8, 9

Local Bankruptcy Rule 7056-1 ...................................................................................... 1

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7056 and Local Bankruptcy Rule 7056-1, the Defendant, D & H Distributing Company ("D&H" or the "Defendant"), by and through its undersigned counsel, files this Response in Opposition to Plaintiff's Motion for Summary Judgment and states as follows:

## I.    INTRODUCTION/SUMMARY OF ARGUMENT

Summary Judgment is simply not proper in this case given the totality of the record and the abundance of factual disputes that exist between the parties. Nonetheless, the Plaintiff forces the Defendant to labor through the exercise of pointing out where obvious material issues of fact exist. Not only has the Plaintiff imposed this burden on the Defendant, it presented their case for summary judgment through Plaintiff's Motion for Summary Judgment (Doc. No. 41) (the "Plaintiff's Motion") and supporting brief that misstated the issues in the case; grossly misstated and overstated testimony and the record; theorized what defenses the Defendant would rely upon; and drew self-serving conclusions that no facts were in dispute. It is almost impossible to respond to the narrative set forth by the Plaintiff's Motion sentence by sentence as that would largely give credence to the Plaintiff's narrative of the case, which skips over key arguments, defenses and issues to be used by the Defendant in its defense. Accordingly, rather than engage in that exercise, the Defendant, through this Response, will lay out the two main issues in play in this case and illustrate the obvious material facts in dispute that clearly removes this case from being adjudicated on summary judgment.

The two main issues in this case simply are not ripe for summary judgment. In both cases, significant material facts are in dispute. The issues are as follows:

1)    **WHETHER THE PLAINTIFF HAS MET ITS *PRIMA FACIE* BURDEN UNDER 11 U.S.C. § 547(b) TO ADVANCE THIS CAUSE OF ACTION AGAINST THE DEFENDANT.**

**SHORT ANSWER:  NO.**

In order to prove the *prima facie* case under 11 U.S.C. § 547(b), the Plaintiff is required to show that the transfers made to the Defendant enabled the Defendant to "receive more than such creditor (the Defendant) would have received had the case been a chapter 7 liquidation and the creditor not received the transfer."  11 U.S.C. § 547(b)(5).

As more fully set forth herein, the Plaintiff tries to gloss over this required element of their *prima facie* case without offering any evidence at all to support the element other than to have their lone remaining employee, Kevin Kovacs, make a blanket and self-serving statement which in essence says "trust me, the creditors won't be paid in full."  There is no factual basis to "trust" this position.  The Plaintiff admits the claims of the Debtors have not been reconciled and not even a good faith estimate is given.  Meanwhile, Mr. Kovacs is actively pursuing multiple sources of recoverable dollars to pay the unknown universe of creditors.  This pursuit includes over $4 million in this case alone, between 25 to 50 cases similar in legal theory to this case (*i.e.*, preference actions), a class action lawsuit, a "large" vendor credit claim, in addition to tax refunds and the liquidation of a piece of real estate.

It would be inappropriate to grant summary judgment to the Plaintiff at this point given the state of the record.  Clearly, the Plaintiff has not carried its burden.

**2)    WHETHER THE DEFENDANT CAN ASSERT A SUBJECTIVE ORDINARY COURSE OF BUSINESS DEFENSE TO THE ALLEGATIONS IN THE COMPLAINT?**

**SHORT ANSWER:  YES.**

It is almost inherently obvious in a "preference" case where a party relies upon the "ordinary course of business" defense, and particularly in this case, where the Defendant exclusively relies on the "subjective" "ordinary course of business" defense that summary judgment is not proper.

More specifically, the "subjective ordinary course of business" defense requires a consideration of the course of dealing specific to the debtor and the creditor. Thus, this test examines only the ordinary course of business between "the debtor and the transferee." Primarily, the test examines how the debtor and the transferee conducted business historically and compares it to how the debtor and the transferee conducted business during the "preference period."

As the Defendant will highlight herein, the record is littered with evidence showing that the transfers in question in this case (the "Transfers") which were made in the 90 days prior to the bankruptcy, were made in a manner consistent with how transfers were made on invoices between the Defendant and the Debtors during the two years leading up to the 90 days prior to the Debtors' bankruptcy. Objectively, the Defendant will show that over 95% of the Transfers were made between a proximate range of -5 to 15 days from invoice due date, while over 95% of transfers received historically were also made between a proximate range of -5 to 15 days from invoice due date.

The Plaintiff raises several counter arguments against the Defendant's assertion that it can successfully set forth a subjective ordinary course of a business defense. While each will ultimately fail at trial in this matter, at an absolute minimum, each requires an evaluation of facts that are in dispute, thus making the Plaintiff's request for summary judgment improper.

The Plaintiff's counter arguments are as follows:

1)    The Plaintiff argues that the payment history was inconsistent and that the Plaintiff began to pay the Defendant differently during the 90 days. This simply is not accurate and is not supported by the data or by the testimony of several witnesses, including Kevin Kovacs, the Debtors' (30)(b)(6) witness on several key issues, including but not limited to, the Debtors' business dealings with the Defendant during the 90 days prior to the Debtors' petition date,

purchasing, invoicing and controlling terms of the transactions and payment practices related thereto.  Regardless of merit, the determination of this dispute requires an evaluation of facts.

2)    In addition to simply stating there is a dispute regarding interpretation of the data, the Plaintiff portrays the data in a manner that is different than how it is portrayed by the Defendant.  The Plaintiff's analysis compares invoice date to payment date, as opposed to the Defendant's comparison of invoice "due" date to payment date.

The Defendant's portrayal of the data (invoice "due" date to invoice date) is proper in this case.  Over the course of the applicable dealing history between the Debtors and the Defendant, the parties had different payment terms at various times.  The Debtors routinely paid the Defendant consistent with the then current terms.  In other words, the Debtors always paid on time and consistent with invoice terms (*i.e.*, if the terms were Net 30, the Debtors usually paid in 30 days; if the terms were Net 15, the Debtors usually paid in 15 days).  To that end, allowing the Plaintiff to compare the date of invoice to payment date (which will result in discrepancies between various payments because of the changing terms) ignores the timeliness of the payment, which was the historic cornerstone of the relationship between the Debtors and the Defendant.  The Defendant will produce testimony to illustrate why its method is the proper and reasonable manner to review such data.  Determining the proper analysis itself creates a dispute based upon material facts which the Court will have to examine at the time of trial.

3)    The Plaintiff argues that certain data in the payment history between the parties should not be considered to establish consistency with the 90-day period because the Debtors' business had begun to experience the "onset of financial distress associated with the Debtors' impending bankruptcy".  Specifically, the Plaintiff is relying on *Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.,* 826 F.3d 388, 394 (7th Cir. 2016) to support its theory that it can truncate the historical-dealings period to eliminate from the analysis the dealing

-4-

history between the parties beginning in February 2016 up until the 90-day period before the bankruptcy. The Plaintiff asserts that the "onset of the Debtors' financial distress that led to the Debtors' bankruptcy" began on or about such date. The Plaintiff supports this assertion by attempting to show that, as of that date, the Defendant could no longer ascertain credit insurance for the Debtors in the same amounts as they had historically. Although the elimination of such period does not greatly change the result of the overall analysis it does alter it, and such truncation on that date is simply not proper. First, *Sparrer Sausage Co., Inc.* is not well established law. Second, the Defendant will show facts that clearly illustrate that the Debtors' financial position did not materially change on such date. Further, it will show that the availability of credit insurance is not a significant indicator of potential distress to determine whether a truncated period is proper. Regardless, the overall question is one that relies upon a factual interpretation to arrive at a conclusion.

        4)      Finally, the Plaintiff contends that the Defendant coerced the Debtors to make the Transfers in the manner they were made during the 90-day period by asserting an undue and heightened level of pressure on the Debtors. First, there is a legal standard for determining what type of conduct is permissible. This requires a factual inquiry into the conduct of the Defendant. Whether the conduct of the Plaintiff rose to such standard is a factual inquiry which must be reviewed and determined by the Court. The Defendant will set forth facts regarding the issue herein and contend that such facts do not rise to the level of undue pressure. Clearly such issue can only be resolved after an evaluation of such facts.

        In addition, the Defendant will show that any pressure or inquiries as to payments during the 90 days were consistent with the same type of conduct and communications made by the Plaintiff to the Defendant. Again, this is a factual issue which the Court must resolve through evaluation of the evidence.

For these reasons, summary judgment is clearly not proper in this case.

## II.    NATURE AND STAGE OF PROCEEDINGS

On March 6, 2017 (the "Petition Date"), the Debtors filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code [Doc. No. 1].  On November 17, 2017, the Plaintiff filed its Complaint seeking to avoid and recover the Transfers as, *inter alia*, allegedly preferential transfers made in the 90 days prior to the Petition Date (the "Preference Period").  [Doc. No. 1].  *See* Complaint at ¶21.  On December 15, 2017, D&H filed an Answer to the Debtors' Complaint. [Doc. No. 8].  On January 10, 2020, the Debtors filed their Motion for Summary Judgment.

## III.    STATEMENT OF MATERIAL FACTS IN DISPUTE AND RELEVANT BACKGROUND[1]

As an initial matter, the Plaintiff's Summary Judgment Motion and accompanying declaration omit numerous facts, fail to note when facts are in dispute, and fail to provide record citations for its numerous leaps in logic and conclusory allegations.  Even a cursory review of the voluminous record developed in this case makes clear that Plaintiff's Summary Judgment Motion must be denied because the ultimate question as to whether D&H received preferential payments during the preference period involves material issues of disputed fact.

### D&H Background

D&H is a leading technology distributor providing the latest solutions and services and exceptional partner experiences to resellers and retailers throughout North America.  *Warfield Dec.* at ¶2.  Anthony Warfield is the Vice President of Credit Services for D&H and held that position during the relevant time period.  *Warfield Dec.* at ¶1.

D&H has maintained a supplier relationship with the Debtors since the 1980s.  (*See Warfield Dec.* at ¶4.)  D&H supplied goods for sale in its stores through deliveries to the Debtors'

---

[1] In **Exhibit A**, D&H's Response to Debtors' Statement of Material Facts, D&H Responds to each numbered factual averment contained in Debtors' Motion.

regional warehouses and for online sales via the Debtors' website. (*See Warfield Dec.* at ¶5). Over the course of the relationship between the parties, D&H supplied goods on credit terms which changed at several times. (*See Warfield Dec.* at ¶6). Specifically, in the two years prior to the Petition Date, the payment terms were generally Net 60 from until November 2015; Net 30 from November 2015 through February 2016; and 0.25% 15, Net 16 from late February 2016 through the March 6, 2017 the Petition Date, subject to some overlap during crossover periods on actual invoices. (*See Warfield Dec.* at ¶7). At any given time during the relationship, D&H monitored the Debtors' compliance with its existing payment terms. (*See Warfield Dec.* at ¶12).

### The Debtors' Payment History with D&H

At any given time during the relationship, the Debtors paid nearly all D&H invoices within days of the corresponding payment terms. (*See Warfield Dec.* at ¶9). Specifically, between January 2015 and the commencement of the Preference Period, nearly all invoices (over 95%) were paid within a proximate range of -5 to 15 days of the corresponding due date for such invoice. (*See Warfield Dec.* at ¶¶10-11.) Likewise, over 95% of the invoices paid by the Debtors to D&H during the Preference Period were paid within the same range of time. (*See Warfield Dec.* at ¶11).

### D&H's and the Debtors' business relationship after the Debtors' account no longer qualified for credit insurance.

In December 2015, when D&H received the notification that the credit insurance for the *hhgregg* account was being terminated, it naturally conducted a review of that account. *Id.* at ¶14. As the Vice President of Credit Services, one of Mr. Warfield's responsibilities is to review the credit accounts of large customers like *hhgregg*. *Id.* at ¶12. When reviewing the credit accounts of customers, D&H would look at several sources of publicly available information. *Id.* at ¶12.

During that same time period that *hhgregg* is arguing this court should ignore due to *hhgregg*'s financial health, *hhgregg* was representing to shareholders that its health was fine, and

-7-

it was on the upswing. For example, in an August 4, 2016 press release, *hhgregg* President, CEO and CFO stated, "We delivered a solid first fiscal quarter and are off to a positive start to our fiscal year. We made progress toward our top company goal of driving revenue. We improved comps sequentially from last quarter and year-over-year, driven by appliances which generated a 3.7% comparable store sales increase in the quarter along without continued growth in furniture." (*See* **Exhibit C**, August 4, 2016 Press Release).

The mode of dealing between the parties did not change in any material respects throughout the relationship. (*See Warfield Dec.* at ¶20). Even when D&H was made aware over time of factors impacting the Debtors' business, D&H continued to do business with the Debtors on trade terms. (*See Warfield Dec.* at ¶18). At no time did D&H engage in any out of the ordinary or different collection practices in terms of collecting any invoice amounts from the Debtors. (*See Warfield Dec.* at ¶21). To the contrary, D&H's collection practices on its shipments of goods (calls, emails, evaluation of credit terms extended), were not altered during the Preference Period. (*See Warfield Dec.* at ¶21).

The Debtors identified "it took pride in paying bills on time" and that it intended to make payments on time, while endeavoring to work through discrepancies in proofs of delivery and internal warehouse issues. (*See* **Exhibit D**, attached hereto, Deposition of Kevin Kovac at pp. 47:16 – 50:5; **Exhibit B**, *Warfield Dec.* at ¶21 and **Exhibit 3** to *Warfield Dec.*)

## IV.    LEGAL ARGUMENT

### A.    Summary Judgment Standard

Pursuant to Federal Rules of Civil Procedure 56, a court should grant a motion for summary judgment only if there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. *Hakim v. Accenture U.S. Pension Plan, 718 F.3d 675, 681* (7th

Cir. 2013). In determining the motion, the court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant. *Id.* citing *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir.2004) . Further, in assessing summary judgment, a court must neither resolve disputed facts nor weigh evidence. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. Ill. 2011). A court reviewing a summary judgment motion also may not make determinations of credibility. *Id.* In these cases, the party opposing a summary judgment motion is entitled to have his or her version of the facts accepted as true. *Rush v. McDonald's Corp., 966 F.2d 1104, 1114* (7th Cir. Ind. 1992).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party". Fed.R.Civ.P. 56(e); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there is sufficient evidence "[w]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co.,*24 F.3d 508, 512 (3d Cir.1994).

**B.      Plaintiff has not proved its *prima facie* case under 11 U.S.C. § 547(b)**

When all inferences to be drawn from the underlying facts are viewed in the light most favorable to the Defendant, the pleadings, declarations and exhibits submitted in connection with this Adversary Proceeding show that there is a genuine issue as to whether the Debtors have adequately evidenced all of the necessary elements to satisfy its *prima facie* case under 11 U.S.C. § 547(b), and therefore, the Plaintiff's Motion for Summary Judgment should be denied.

To be recoverable as a preferential transfer, a payment must satisfy all of the requirements of 11 U.S.C. § 547(b).  Specifically, the transfer must have been:

(1)      made to or for the benefit of a creditor;
(2)      made for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3)      made while the debtor was insolvent;
(4)      made on or within ninety (90) days before the date of filing of the petition; and
(5)      enabled the benefited creditor to receive more than such creditor would have received had the case been a Chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b).

The trustee or debtor in possession bears the burden of proving each of these elements by a preponderance of the evidence.  11 U.S.C. § 547(g); *Dunlap v. K.L. Properties, LLC (In re Wasp Precision Mach., Inc.),* No. 06-03842-JKC, 2008 WL 1957792, at *2 (Bankr. S.D. Ind. May 1, 2008) (citing *In re Prescott,* 85 F.2d 719, 726 (7th Cir. 1986)); *Util. Stationery Stores, Inc. v. American Portfolio, et al. (In re Util. Stationery Stores, Inc.),* 12 B.R. 170, 175 (Bankr. N.D. Ill. 1981).

D&H concedes the first four (4) elements necessary under Section 547(b) have been established by the Debtors.  However, D&H disputes that the Debtors have introduced sufficient evidence to demonstrate that D&H received more than it otherwise would have received had the case been a Chapter 7 liquidation and D&H had not received the transfers.

-10-

The Debtors essentially want the Court to just take them at their word that creditors will not be paid in full in this case.  Unfortunately, the Debtors not only bear the burden to prove their own *prima facie* case, they carry an even higher burden to demand summary judgment on this issue.

In order to determine from a factual basis that the creditors in the Debtors' bankruptcy will not be paid in full, two key determinations must be made:

First, a determination of the total dollar amount of all creditor claims must be made.  The Debtors offer absolutely no evidence of this dollar amount.  The only evidence they offer at all is a statement from the Kovacs Declaration which reads, "the company has yet to complete a reconciliation of claims."  (*See* Kovacs Declaration attached to the Debtors' Motion for Summary Judgment).  So from a factual perspective, the claims amount could be practically anything.  Clearly, this is a "wide open" issue of material fact, which the Plaintiff bears the burden of proof.

Second, a determination must be made as to the value of assets which will be available to pay such claims.  Here, the Debtors offer absolutely no evidence of such amount.  However, Mr. Kovacs remains employed by the Debtors' estate almost solely to produce value through the liquidation of assets, which as of July 29, 2019, included a piece of real estate; the pursuit of between 25 to 50 causes of action based upon 11 U.S.C. § 547(b) (preference actions), which includes this instant case where the Debtors seek a judgment in excess of $4 million; letter of credit refunds; tax refunds; recoveries expected from class action matters where the Debtors are Plaintiffs; and a large vendor matter where the vendor is being pursued to return money it owes to the Debtors for vendor credits.  (*See* **Exhibit D**, Kovacs Deposition, p. 10:1 – 13:16.)

The existence of this seemingly large stable of assets which are being liquidated to pay a completely undefined amount of creditor claims creates a clear issue of material fact as to whether creditors of the Debtors will be paid in full.

As the Debtors carry the burden of proof on this issue and given the complete lack of facts presented, there is no evidentiary basis to even begin to assess the issue let alone to grant summary judgment on the issue of whether the Transfers made to the Defendant enabled the Defendant to "receive more than [the Defendant] would have received had the case been a Chapter 7 liquidation and the creditor not received the transfer."

C.    **A Material Issue of Fact Exists as to Whether a Subjective Ordinary Course of Business Defense can be Raised Pursuant to 11 U.S.C. §547(c)(2)(A)**

When all inferences to be drawn from the underlying facts are viewed in the light most favorable to the Defendant, the pleadings, affidavits and declarations submitted in connection with this Adversary Proceeding show that there are genuine issues of material fact existing as to whether D&H may assert that all of the Transfers were made in the "ordinary course of business" pursuant to 11 U.S.C. § 547(c)(2)(A). The Defendant will rely solely on the subjective ordinary course of business test pursuant to 11 U.S.C. § 547(c)(2)(A) (as opposed to the objective test under 11 U.S.C. § 547(c)(2)(B)) at trial to show that the Transfers were made in the "ordinary course of business" between the Debtors and D&H.

i.    **Elements of the Subjective Ordinary Course of Business Defense Pursuant to 11 U.S.C. § 547(c)(2)(A).**

The subjective ordinary course of business defense, codified in Section 547(c)(2)(A) of the Bankruptcy Code, provides that an otherwise preferential payment may not be avoided under § 547(b):

(2) . . . to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –

-12-

(A)    made in the ordinary course of business or financial affairs of the debtor and the transferee

The first element of the subjective ordinary course defense requires the creditor to show that the debt, which was paid during the preference period, was a *debt* which was *incurred* in the ordinary course of business or financial affairs between the parties. *In re Hill*, 589 B.R. 614, 625 (Bankr. E. D. Ill. 2018). (Emphasis added). The second element requires the creditor to show that the *transfer* at issue was *made* in the ordinary course of business or financial affairs of the debtor and transferee. *Id.* at 626.

The subjective test asks whether the payments the debtor made to the creditor *during* the preference period are consistent with the parties' practice *before* the preference period. *Sparrer Sausage Co., Inc.*, 826 F.3d at, 393. The subjective prong requires proof that the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor. *Id at 393.* (Inquiry not governed by a "precise legal test" but entails using the debtor's payment history to calculate a baseline for the companies' dealings and then comparing preference-period payments to that baseline).

In making a determination under the subjective prong, courts consider several factors, including but not limited to:  (1) the length of time the parties were engaged in the transaction at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition. *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003). However, the cornerstone element of the ordinary course preference defense is that the creditor needs to demonstrate some consistency with other business transactions between the debtor and the creditor. *Lovett v. St. Johnsbury Trucking*, 931 F. 2d 494 (8th Cir. 1991); *Sparrer Sausage Co., Inc*., 826 F.3d at 396 (opining that a 16-to-28-day baseline appears not only excessively narrow but also arbitrary and noting that "court should be hesitant to

-13-

embrace analysis by range when so doing would incorporate aberrations that artificially widen the range, thus presenting an inaccurate portrait of the actual ordinary course of business between the parties").

      **ii.**    **D&H Has Presented Factual Bases that the Transfers Meet the Subjective Ordinary Course of Business Defense Pursuant to 11 U.S.C. § 547(c)(2)(A)**

In the instance case, the following facts support factual bases that the Transfers were made in the ordinary course of business between the Debtors and D&H.

D&H can satisfy the first element of Section 547(c)(2) of the Bankruptcy Code as D&H has maintained a supplier relationship with the Debtors for decades and each of the Transfers relate to the payment of debt incurred concerning the shipment of goods on credit terms between the parties. (*See* **Exhibit E**, Warfield Dep., dated July 25, 2019, pp. 25:20-26:04). Throughout the parties' relationship and during the Preference Period, D&H supplied the Debtors with goods for sale in the Debtors' stores through deliveries to the Debtors' regional warehouses and for online sales via the Debtors' website. (*See* **Exhibit B**, *Warfield Dec.* at ¶5). Over the course of the relationship between the parties, D&H supplied the goods on trade terms, and such terms were adjusted over the course of the relationship at the request of the Debtors, depending upon their appetite for the Defendant's goods. (**Exhibit E**, Warfield Dep. at 27:04 – 27:16; **Exhibit F**, May Dep. at 28:11-29:15). Even when D&H was made aware over time of issues impacting the Debtors' business, D&H continued to do business with the Debtors on trade terms. (*See* **Exhibit E**, Warfield Dep. At 27:04 – 27:16). D&H remained comfortable continuing to deal with the Debtors so long as the Debtors continued to comply with payment terms and general dealings between the parties. (*See* **Exhibit B**, *Warfield Dec.* ¶20).

D&H can satisfy the second element (the subjective prong) of Section 547(c)(2) of the Bankruptcy Code on the basis that each of the Transfers in the Preference Period paid invoices in

the same manner and within a proximate range of time that illustrates no deviation from the historical dealings between the Debtors and D&H. (*See* **Exhibit B**, *Warfield Dec.* at ¶¶10-11 and **Exhibit D**, Kovacs Dep. at pp. 43:23 - 44:14, 49:12 - 50:11, 52:2 – 53:6). Regardless of what the trade terms were at any given time during the relationship, the Debtors paid nearly all D&H invoices within days of the corresponding payment terms over the course of thousands of transactions. *Id.* Between January 2015 and the commencement of the Preference Period, nearly all invoices (over 95%) were paid within a proximate range of -5 to 15 days of the corresponding due date for such invoice. *Id.* Likewise, over 95% of the invoices paid by the Debtors to D&H during the Preference Period were paid within the same proximate range of time. *Id.* Such payment history demonstrates no deviation from past practices between the parties. *Id.* Further, the form and manner of payment on such dealings did not change over the course of time. *Id.* Additionally, at no time during the Preference Period did D&H engage in any out of the ordinary or overzealous collection efforts in collecting payment on invoices. (*See* **Exhibit G**, Powers Dep. at 33:01 – 33:21; **Exhibit B**, *Warfield Dec.* at ¶21). To the contrary, D&H's collection practices on its shipments of goods (calls, emails, evaluation of credit terms extended) were not altered during the Preference Period. (*See Warfield Dec.* ¶21). By way of example, during the historical period from October 2014 through December 2015, the Defendant made a series of inquiries to the Debtors attempting to understand the status of payment. These were substantially similar to the inquires made by the Defendant during the Preference Period. (*See* **Exhibit B**, *Warfield Dec.* at ¶21 and Exhibit 3, attached thereto). Additionally, at no time did D&H take advantage of the Debtors' deteriorating financial condition during the Preference Period. To the contrary, D&H continued to treat the Debtors as an ongoing customer and supported the Debtors in a manner that enabled the Debtors to meet its inventory requirements during a peak holiday period. (*See* **Exhibit B**, *Warfield Dec.* ¶18-19; **Exhibit F**, May Dep. at 25:13 – 26:05; 27:15 – 27:22; 41:10-42:01).

As a result, it would be hard to imagine a more ordinary course transaction history than the one present here where the Debtors paid a vendor, with whom it had a long-term relationship, in the same "on-time" manner during the "preference period" as it did historically.

The preceding evidence sets forth a significant evidentiary basis to show that the Transfers were made in the "ordinary course of business." When these facts are viewed in the light most favorable to D&H, summary judgment in favor of the Plaintiff as to Count I of the Complaint, given the existence of the "ordinary course of business" defense, is simply not proper.

### iii.    The Plaintiff's Counter-Arguments All Raise Factual Issues

The Plaintiff raises three counter arguments to the Defendant's assertion of a full subsection ordinary course of business defense. Specifically, the Plaintiff raises the following arguments:

1)    the Plaintiff attempts to portray the transactional data using a comparison of "invoice date" to payment date, rather than "invoice due date" to payment date;

2)    the Plaintiff argues the historical dealing data should be truncated to eliminate from the dealing history all transactions after February 2016 to consider that the "onset of the Plaintiff's financial distress that led to the bankruptcy being filed began as of such date; and

3)    the Plaintiff asserts that the Defendant applied undue pressure on the Debtors during the Preference Period in order to be paid.

### a.    Accounting for Data

The Defendant, in formulating the data it discussed in section III above selected an appropriate means to present it to the Court to illustrate the dealing history between the Defendant and the Debtors. Specifically, the Defendant utilized an analysis of the date an invoice was due pursuant to the then applicable terms and compared it to the date such invoice was paid. This produced an "age" which was equal to the time it took for the invoice to be paid from the date it

was due.  The Plaintiff sets forth their data in the Plaintiff's Motion in a different manner.  The Plaintiff utilized the actual invoice date and compared it to the date it was paid.  (*See* Motion for Summary Judgment at p.21; Kovacs Dec. at Exhibits C and M).

The Defendant's presentation under the totality of circumstances is the correct manner in which to view the data.  This analysis turns on one predominant fact, being that the Defendant and the Debtors used different trade terms throughout their dealing history.  Specifically, the parties utilized both Net 30 and .25% 15, Net 16 within the two years prior to the Petition Date.  (*See Warfield Dec.* at ¶7).  Accordingly, in order to view the data in a meaningful way, a "common denominator" must be found.  Given the shift in terms, the only common denominator would be "days late from terms".

In evaluating a subjective ordinary course of business defense, the law is not precise on methodologies and bankruptcy courts utilize various methods to measure the payments in a preference period against payments in historical periods, including but not limited to, the average lateness or total range from invoice.  *Sparrer Sausage*, 826 F.3d at, 395; *In re Am. Home Mortg. Holdings, Inc.*, 476 B.R. 124, 138 (Bankr. D. Del. 2012) (applying the total-range method because the average invoice age did not "'portray the complete picture' of the payment history" between the creditor and debtor).  In any respect, the cornerstone element of a subjective ordinary course of business defense "is that the creditor need demonstrate some consistency with other business transactions between the debtor and the creditor." *Lovett*, 931 F.2d at 497.  Courts often utilize the lateness of payment approach to compare payments in the ordinary course of business, including where trade terms have changed over time. *See, e.g.*, *In re Tennessee Chemical Co.*, 112 F.3d 234, 237 (6th Cir. 1997) (extensive history of late payments were made in "ordinary course of business," so as to fall within exception to trustee's preference avoidance power).  *In re Elrod Holdings Corp.*, 426 B.R. at 111; *In re Big Wheel Holding Co., Inc.*, 223 B.R. 669, 674 (Bankr. D.

Del. 1998). (Pattern of late payments can establish an ordinary course between parties). *In Re Tennessee Chemical Co.*, the Court found that lateness of payments can be an appropriate way to calculate the baseline. In that case, the Court distinguished between the payments that were made within 30-day terms and those made within 60-day terms. In *In re Tennessee Chemical Co.*, 112 F.3d at 236. The Court went on to state that the defendant was a "regular supplier" and the ordinary course of business exception is intended to cover precisely this type of situation." *Id.* at 238.

In the instant case, the parties adjusted their trade terms in the course of their dealings over the years and the only common denominator would be "days late from terms". The Defendant has utilized such common denominator in its analysis to present a clear and convincing consistency of dealing with the Debtors, regardless of the actual trade terms at any given time. The record also clearly reflects that the parties utilized trade terms as a guide-post in their dealings, and that the Debtors sought to "pay on time". (*See* **Exhibit D**, Kovacs Dep. at pp 47-50; **Exhibit F**, May Dep. at pp. 22:08 – 22:15; **Exhibit B**, *Warfield Dec.* at Exhibits 1 and 2).

Given these facts, at a minimum there is a dispute between the parties as to how the data should be reviewed. This removes the case from being able to be adjudicated by summary judgment.

### b.      Truncation of pre-preference look back period is not warranted

The Defendant has established a reasonable collection of historical transactions between itself and the Debtors to serve as a basis to compare the consistency between prior dealings and the dealings within the 90 day time period. The Defendant reasonably chose all invoices (without exclusion) that occurred between January 2015 until December 2016, which is a time period that runs from the 91st day before the Debtors' bankruptcy and goes back to January 2015, 23 months prior to the bankruptcy filing (the "Historical Dealings").

In the Motion, the Plaintiff asks the Court to truncate the Historical Dealings and eliminate from consideration the dealings from February 2016 through the 91st day before the bankruptcy - - a period of over 12 months. The Plaintiff attempts to argue in the instant case that Historical Dealings should be truncated as of February 2016 because the Defendant was notified in late 2015 by its credit insurance carrier, Euler Hermes, that it would begin to downsize the amount of insurance available for the Debtors and that soon thereafter no credit insurance would be offered. The Plaintiff asserts that such event and alleged changes resulting from this cancellation meets the standard in *Sparrer Sausage* that illustrates that the Debtors were not "financially healthy". In support of this position, the Plaintiff relies upon a lower bankruptcy court decision *In re Sparrer Sausage Co. Inc.*, No. ADV 13 AP 01195, 2014 WL 4258103, (Bankr. N.D. Ill. Aug. 27, 2014), subsequently rev'd sub nom. *Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.*, 826 F.3d 388 (7th Cir. 2016), in which the bankruptcy court held that truncation of a historical period is proper if the Plaintiff can show that on a particular date the debtor  mark the beginning of the debtor's financial difficulties.

There are two very substantial flaws in the Plaintiff's analysis. First, truncation as set forth by the lower court in *Sparrer Sausage* is simply not well-established law and in fact it is beyond just a minority opinion, it basically stands alone in its concept. Indeed, the 7th Circuit found the evidence in such case "hardly overwhelming" and while not finding clear error in the underlying decision, noted that the debtor in the case did not experience a marked "liquidity crisis" or other stark change in its payment practices. *Sparrer Sausage Co., Inc.*, 826 F.3d at 395. While the 7th Circuit found that a historical period may be truncated in such circumstances, it has also stated that in other cases it will be necessary to consider the entire historical dealings, and that "[i]n all cases the contours of the historical period should be grounded in the companies' payment history rather than dictated by a fixed or arbitrary cutoff date." *Id.* As recognized by the 7th Circuit, the analysis

-19-

regarding the subjective ordinary course of business defense, and the role, if any, truncation plays in that defense is "fact intensive" and "context specific." *Id.* To the extent courts elsewhere consider truncating the dealings, actual evidence demonstrating a deterioration significant enough to cause an abrupt change is sought. (*See, e.g.*, *In re Blue Global, Inc.*, 591 B.R. 433, 448 (Bankr. C.D. Cal. 2018).

In *Blue Global*, a trustee attempted to truncate the pre-preference baseline period to all transactions that occurred prior to the debtor's entry into a consent order with the NY State Department of Financial Services, which required the debtor to make several large settlement payments. The court found that "there is no genuine dispute that the payments required under the Consent Decree imposed a financial burden upon the Debtors". *Id.* at 448. However, the Court opined that the trustee has failed to supply evidence showing that the financial burden associated with the Consent Decree resulted in a material deterioration in the Debtors' finances significant enough to cause an abrupt change in the Debtors' payment practices, such that a new paradigm with respect to payment practices came into existence. *Id.* Indeed, allowing such truncation absent a material shift in dealings essentially expands the preference period and moves the proverbial goal posts on creditors, and is against the spirit of encouraging creditors to continue to do business with companies facing any third-party's opinion of financial distress.

Second, even if truncation is proper in certain instances, it is not proper to use it to eliminate 11 months of the Historical Dealings based upon the adjustment and eventual loss by the Plaintiff of credit insurance on the Debtors. The Defendant has identified that credit insurers do not determine its credit terms, the Defendant does. (*See* **Exhibit B**, *Warfield Dec.* at ¶¶16-17 and Exhibits 1 and 2). Further, cancellation of credit insurance by Euler Hermes for D&H did not demonstrate any marked "liquidity crisis" for the Debtors or other stark change in the Debtors' payment practices. To the contrary, the Debtors routinely paid the Defendant consistent with the

then current terms.  (*See* **Exhibit B**, *Warfield Dec.* at Exhibits 1 and 2).  Further, at the time the trade terms were adjusted in 2016, the Debtors were communicating positive indicators in its business.  (*See* **Exhibit C**).

Through the Motion, the Plaintiff offers no other evidence to support truncation of the Historical Dealings, yet the Plaintiff makes sweeping and unsupported allegations that a change in trade terms with D&H in 2016 was a tipping point for distress to warrant truncation and rely upon a different statistical analysis of the time period to support an alleged shift in the course of dealings between the parties.  (*See* Motion for Summary Judgment at pp. 20-22 vs. **Exhibit B**, *Warfield Dec.* at ¶¶8-11 and Exhibits 1 and 2).  The Defendant has set forth a pattern of consistency in dealings in the Preference Period that shows no deviation from the Historical Dealings.  (*See* **Exhibit B**, *Warfield Dec.* at Exhibits 1 and 2).  Therefore, truncation is clearly not warranted in the instant case, as no stark change in practice exists between the Debtors and D&H.  At a minimum, the evidence at issue gives rise to a genuine dispute with respect to the appropriate baseline period, and a full and fair trial on the merits is warranted.

### c.    Undue Influence

Finally, the Plaintiff contends that unusual collection efforts should negate the application of a subjective ordinary course of business defense in this case.  In support of its argument that D&H's actions towards the Debtors make the payments during the Preference Period should be excepted from a subjective ordinary course of business defense, the Debtors cite to (1) the change in trade terms in January 2016 and (2) collection pressure allegedly asserted by D&H on the Debtors.

It is well settled that the court must evaluate whether particular transfers should be excepted from the ordinary course of business defense whenever the court receives evidence that any transfers within the 90-day preference period were the result of "unusual" collection efforts.

-21-

*Marathon Oil Co. v. Flatau (In re Craig Oil Co.),* 785 F.2d 1563, 1563 (11th Cir.1986); *See In re Elrod Holdings Corp.*, 426 B.R. at 112 (Court satisfied that after weighing the evidence in the record, the ordinary course of business exception of 11 U.S.C. § 547(c)(2)(A) applies, where payments were made after supplier had contacted debtor to inquire about when payment would be forthcoming, where it was customary for supplier, over course of parties' relationship to inquire about unpaid invoices, and where there was no evidence that supplier took advantage of debtor's deteriorating financial condition).    Therefore, an evaluation of the alleged conduct during the Preference Period versus how parties dealt over time is necessary in order to determine what conduct amounts to "unusual" efforts.

In the instant case, the Plaintiff's arguments take facts out of context and are disputed by the existing record.  First and foremost, the Plaintiff alleges that a change in trade terms initiated by D&H in February 2016 demonstrates undue pressure.  (*See* Motion at pp. 22-25).  Not only did such terms change 10 months prior to the commencement of the Preference Period, but the Debtors' personnel has testified that such change was requested and negotiated by the Debtors, in order to satisfy an appetite for certain inventory after other distributors could not support the Debtors.  (*See* **Exhibit E**, Warfield Dep., pp. 27:04 – 27:16; **Exhibit F**, May Dep., pp. 28:11-29:15).  Such conduct simply does not amount to undue pressure on purchases that were not even placed by the Debtors almost a year after such trade terms were implemented.

Second, the Plaintiff's reliance of a subset of correspondence – presented to the Court in isolation – is taken out of context.  This limited extract of communication is not the type of undue pressure the Plaintiff would have the Court believe it to be.  The correspondence cited reflects a level of dialog that could be expected from a significant vendor that provided ongoing support to a customer, and during a time where the Debtors identified it was facing deliveries receiving shipments due to its recent consolidation of distribution centers during a peak holiday period.  (*See*

-22-

**Exhibit B**, *Warfield Dec.* at Exhibit 3 ; **Exhibit F**, May Dep., pp. 25:13 – 26:05; 27:15 – 27:22; 41:10-42:01).  As the Debtors' own employee has testified, at no time during the Preference Period did D&H engage in any out of the ordinary or overzealous collection efforts in collecting payment on invoices; it acted in a manner consistent with its dealings with the Debtors over the course of a decades long relationship.  (*See* **Exhibit G**, Powers at pp. 31-7 – 31:14 and 33:15 – 33:19; *see also* **Exhibit B**, *Warfield Dec.* at ¶20).  Therefore, in the light most favorable to D&H, a factual dispute exists and any determination on undue pressure should be made after a full and fair trial on the merits.

The foregoing contentions only rise – in their most favorable light - to the level of a factual dispute.  In total, where the facts presented are viewed in the light most favorable to D&H, a strong factual basis exists to show that the Transfers were made in the ordinary course of business pursuant to 11 U.S.C. §547(c)(2).  Therefore, the Plaintiff's Motion to the extent it seeks summary judgment on Count I of the Complaint should be denied.

## V.    CONCLUSION

For the detailed reasons set forth in this brief, the Defendant requests that the Plaintiff's Motion for Summary Judgment be denied.

<table>
<tr><td></td><td>LEECH TISHMAN FUSCALDO &<br>LAMPL, LLC</td></tr>
<tr><td>Dated:  February 7, 2020</td><td>*/s/ Patrick R. Malone*<br>Patrick W. Carothers (PA ID No. 85721)<br>Patrick R. Malone (PA ID No. 206479)<br>Gregory W. Hauswirth (PA ID No. 307482)<br>525 William Penn Place, 28th Floor<br>Pittsburgh, PA  15219<br>Telephone:  412.261.1600<br>Facsimile:  412.227.5551<br>pcarothers@leechtishman.com<br>pmalone@leechtishman.com<br>ghauswirth@leechtishman.com<br>*Counsel for Defendant, D & H Distributing<br>Company*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Defendant's Response Brief in Opposition to the Plaintiff's Motion for Summary Judgment** was filed electronically this 7th day of February 2020.  Notice of this filing will be sent to all parties registered to receive such notice by operation of the Court's electronic filing system.

/s/ *Patrick R. Malone*
Patrick R. Malone